**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| SAID MENDEZ RODRIGUEZ,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>KRISTI NOEM, *et al.*,<br><br>　　　　　Respondents. | Case No. 2:26-cv-00048-RFB-MDC<br><br>**ORDER GRANTING PRELIMINARY INJUNCTION** |

　　Before the Court is Petitioner Said Mendez Rodriguez's Motion for Preliminary Injunction (ECF No. 2). Through it, he challenges the lawfulness of his ongoing detention at the Nevada Southern Detention Center ("NSDC"), at the hands of Federal Respondents. On January 14, 2026, the Court ordered Respondents to explain why a preliminary injunction should not be granted by January 17, 2026. See ECF No. 4 (order to show cause). The Court later extended this deadline to January 22, 2026. See ECF No. 7. Respondents filed their response on that same day. See ECF No. 8. For the following reasons, the Court grants the Motion and orders Respondents to afford Petitioner a bond hearing under 8 U.S.C. § 1226(a) by February 6, 2026.

**I.　　BACKGROUND**

　　As a preliminary matter, the Court makes the following findings of fact based on Petitioner's *verified*, undisputed factual allegations and the evidence the Parties supply. See Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (quoting Whitten v. Tomlinson, 160 U.S. 231, 242 (1895)).

　　Petitioner Said Mendez Rodriguez is a 21-year-old Salvadoran citizen who has resided in the United States for nearly 14 years. See ECF No. 1 at 5 (Petitioner's verified application for a writ of habeas corpus) [hereinafter, "Verified Pet."]; see also ECF No. 1-2 at 2 (Petitioner's I-213,

1  *i.e.*, his record of deportability/inadmissibility) [hereinafter, "I-213"]. He entered the United States
2  without inspection sometime in December 2012. See Verified Pet. at 5. Since then, he has
3  continuously resided in this country's interior, and he has established robust familial, financial,
4  and community ties within the United States. See id. at 5–6. So much so that one of Petitioner's
5  children is an American citizen. See id. at 6.

6  In September 2025, Mr. Rodriguez was detained by Immigration and Customs
7  Enforcement ("ICE") after being arrested by municipal police officers. On September 13, 2025,
8  the Las Vegas Metropolitan Police Department arrested Petitioner for the offense of domestic
9  violence. See I-213 at 4. That same day, ICE encountered Petitioner at the Clark County Detention
10 Center, and the Department of Homeland Security ("DHS") launched removal proceedings against
11 him. See id. at 3–4. Petitioner was subsequently transported to NSDC, where he remains detained
12 to this day. See Verified Pet. at 2–3.

13 After he was placed in removal proceedings, Petitioner requested a custody
14 redetermination in hopes of being released on bond throughout the pendency of his proceedings.
15 See ECF No. 1-3 at 2 (Order of the immigration judge) [hereinafter, "Bond Order"].

16 In response, DHS has alleged that Petitioner is inadmissible because he is a noncitizen
17 "present in the United States without being admitted or paroled." I-213 at 4 (citing 8 U.S.C.
18 § 1182(a)(6)(A)(i)). Accordingly, Respondents maintain that he is subject to mandatory detention
19 under 8 U.S.C. § 1225(b)(2)(A). See ECF No. 9 at 14 (Respondents' opposition) [hereinafter,
20 "Opposition"]. This novel (re)interpretation of the Immigration and Nationality Act ("INA")—
21 specifically 8 U.S.C. § 1225(b)(2)(A)—contravenes decades of consistent agency practice and
22 current regulations, which previously guaranteed similarly situated noncitizens the opportunity to
23 be released on bond under 8 U.S.C. § 1226(a). See Escobar Salgado v. Mattos, No. 2:25-cv-01872-
24 RFB-EJY, 2025 WL 3205356, at *5–6 (D. Nev. Nov. 17, 2025) (describing the government's new
25 detention policy based on its reinterpretation of § 1225(b)(2)(A)). Nonetheless, it serves as the
26 cornerstone of the Trump Administration's new policy, effective July 8, 2025, of subjecting all
27 noncitizens who entered the country without inspection to mandatory detention during the
28 pendency of removal proceedings, which can take months or even years. Critically, the Board of

1  Immigration Appeals ("BIA") formally adopted the government's radical reinterpretation of
2  longstanding immigration law through a precedential decision which *requires* immigration judges
3  to categorically reject bond for people like Petitioner. See generally Matter of Yajure Hurtado, 29
4  I&N Dec. 216 (BIA 2025) [hereinafter, "Hurtado"].

5  Unsurprisingly, on December 8, 2025, Immigration Judge Daugherty denied Petitioner
6  bond because he—purportedly—lacks jurisdiction under Hurtado. See Verified Pet. at 2; see also
7  Bond Order at 2 ("[T]he Court finds that [Hurtado] remains in effect and this Court does not have
8  jurisdiction over these bond proceedings."). In doing so, the immigration judge declined to make
9  any individualized findings as to Petitioner's dangerousness and/or flight risk. See generally Bond
10 Order; see also Verified Pet. at 2.

11 **II.     DISCUSSION**

12 **A. JURISDICTION**

13 As an initial matter, the Court has habeas jurisdiction to review Petitioner's challenge to
14 the lawfulness of his detention because the relevant jurisdiction stripping provisions of the INA,
15 codified at 8 U.S.C. § 1252, do not apply here. In evaluating jurisdiction under § 1252, the Court
16 is guided "by the general rule to resolve any ambiguities in a jurisdiction-stripping statute in favor
17 of the narrower interpretation, and by the strong presumption in favor of judicial review." Ibarra-
18 Perez v. U.S., 154 F.4th 989, 995–96 (9th Cir. 2025) (quoting Arce v. U.S., 899 F.3d 796, 801 (9th
19 Cir. 2018) (p*er curiam*) (citations and quotation marks omitted)).

20 First, Respondents assert the Court lacks jurisdiction over Petitioner's claims under
21 § 1252(g). Section 1252(g) provides in relevant part: "[N]o court shall have jurisdiction to hear
22 any cause or claim by or on behalf of any [noncitizen] arising from the decision or action by the
23 Attorney General to commence proceedings, adjudicate cases, or execute removal orders against
24 any [noncitizen] under this chapter." 8 U.S.C. § 1252(g). Because Petitioner's claims stem from
25 his detention during removal proceedings, which arise from the Attorney General's decision
26 to commence proceedings against him, Respondents argue that his detention is not subject judicial
27 review.

28 The Supreme Court has interpreted § 1252(g) as "narrow" in scope, applying only to three

1  discrete actions: commencing proceedings, adjudicating cases, and executing removal orders.
2  See Reno v. Am.-Arab Anti-Discrimination Comm'n, 525 U.S. 471, 482 (1999) [hereinafter,
3  "AADC"]. "Instead of 'sweep[ing] in any claim that can technically be said to arise from the three
4  listed actions,' the provision 'refers to just those three specific actions themselves.'" Ibarra-Perez,
5  154 F.4th at 995 (alteration in original) (quoting Jennings v. Rodriguez, 583 U.S. 281, 294
6  (2018)). AADC characterized § 1252(g) as a "discretion-protecting provision," directed against
7  "attempts to impose judicial constraints upon prosecutorial discretion." AADC, 525 U.S. at 485
8  n.9. As such, the government's insistence that "§ 1252(g) covers 'all claims arising from
9  deportation proceedings' or imposes 'a general jurisdictional limit'" has repeatedly been rejected
10 as "implausible." See Dep't of Homeland Sec. v. Regents of the Univ. of Cal., 591 U.S. 1, 14
11 (2020) (quoting AADC, 525 U.S. at 482). And, as the Ninth Circuit recently affirmed in Ibarra-
12 Perez, courts retain "jurisdiction to decide a 'purely legal question' that 'does not challenge the
13 Attorney General's discretionary authority . . . even if the answer to that legal question . . . forms
14 the backdrop against which the Attorney General later will exercise discretionary
15 authority.'" Ibarra-Perez, 154 F.4th at 996 (quoting U.S. v. Hovsepian, 359 F.3d 1144, 1155 (9th
16 Cir. 2004)). Moreover, in cases where a noncitizen challenges the Attorney General's arguably
17 discretionary decision on a purely legal basis as a "violation [of] the Constitution" or "INA," courts
18 have jurisdiction to review such decisions as "premised on a lack of legal authority." Id. at 998.

19 Respondents' argument that detention during the pendency of removal proceedings is
20 unreviewable as an extension of DHS's decision to "commence removal proceedings" has
21 explicitly been rejected by the Supreme Court as "uncritical literalism leading to results that no
22 sensible person could have intended." Jennings, 583 U.S. at 293–94 (citation modified). Because
23 "[t]he government's broad reading of § 1252(g) would lead to a result that is not contemplated in
24 the statute and that has been disavowed by the Supreme Court," the Court concludes Petitioner's
25 claims here do not concern discretionary actions barred from review by § 1252(g). See Ibarra-
26 Perez, 154 F.4th at 997.

27 Second, Respondents' argument that § 1252(b)(9) strips this Court of jurisdiction over
28 Petitioner's claims regarding the lawfulness of his detention is also foreclosed by Supreme Court

precedent. Section 1252(b)(9) provides: "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove [a noncitizen] from the United States under this subchapter [including §§ 1225 and 1226] shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9).

Because Petitioner "[is] not asking for review of an order of removal; [is] not challenging the decision to detain [him] in the first place or to seek removal as opposed to the decision to deny [him] a bond hearing[]; and [is] not even challenging any part of the process by which [his] removability will be determined . . . § 1252(b)(9) does not present a jurisdictional bar." Nielsen v. Preap, 586 U.S. 392, 402 (2019) (quoting Jennings, 585 U.S. at 294–95) (alterations in original).

In Jennings, the Supreme Court specifically rejected the government's broad reading of "arising from" under § 1252(b)(9)—which Respondents continue to assert here—as "extreme," because by only allowing challenges to detention authority through an appeal of a final order of removal (*i.e.*, after the period of detention under § 1225(b)(2) or §§ 1226(a) and (c) has ended), that reading would "make claims of prolonged detention effectively unreviewable." Jennings, 585 U.S. at 293 ("By the time a final order of removal was eventually entered, the allegedly excessive detention would have already taken place. And of course, it is possible that no such order would ever be entered in a particular case, depriving that detainee of any meaningful chance for judicial review."). Moreover, a reading of § 1252 that would "completely immunize[ ] [DHS's] practices and procedures [regarding detention] from due process challenges" cannot be sustained. Walters, 145 F.3d at 1052. As such, because Petitioner's claims regarding the lawfulness of his detention during the pendency of removal proceedings are "independent of or collateral to the removal process," § 1252(b)(9) does not bar them. See Ibarra-Perez, 154 F.4th at 996–97.

**B. EXHAUSTION**

Respondents' argument that the Court should deny relief as a prudential matter and require Petitioner to exhaust his administrative remedies through an appeal to the BIA is also unavailing. The Court fully incorporates by reference its prior finding that administrative

exhaustion is excused as futile due to the BIA's decision in Hurtado. See Jacobo Ramirez v. Noem, No. 2:25-cv-02136-RFB-MDC, 2025 WL 3270137, at *5–6 (D. Nev. Nov. 24, 2025).

### C. PRELIMINARY INJUNCTION

The Court further finds that Petitioner has satisfied the Winter factors and is therefore entitled to a preliminary injunction which directs Respondents to provide him with a bond hearing. See Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008) (setting forth factors for preliminary injunction). To obtain a preliminary injunction, a plaintiff must establish four elements: (1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in their favor, and (4) that the public interest favors an injunction. See Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015) (citation omitted).

Initially, the Court finds Petitioner has established a likelihood of success on the merits of his statutory and due process challenges to his continued detention. This Court previously found in Escobar Salgado that the government's new interpretation of § 1225(b)(2)(A) is incorrect given the statutory text and structure, and that its new policy of detaining noncitizens like Petitioner violates § 1226(a) of the INA, its implementing regulations, and the Due Process Clause of the Fifth Amendment. See Escobar Salgado, 2025 WL 3205356, at *10–26. The Court incorporates by reference and adopts those same findings and legal conclusions here.

First, with respect to the INA challenge, the Court finds that Petitioner—a long-term U.S. resident who was detained in its interior after developing significant ties to this country through years of continuous residence—is entitled to a bond hearing under § 1226(a) and its implementing regulations. See id. at *10–22.

Second, the Court finds Petitioner has established a likelihood of success on the merits of his due process challenge to his ongoing detention without a bond hearing. The procedural due process factors under Mathews v. Eldridge, 424 U.S. 319 (1976), weigh heavily in favor of Petitioner because (1) the private interest affected is the fundamental liberty interest in being free from imprisonment; (2) the risk of erroneous deprivation is extraordinarily high where federal immigration officials have the sole, unguided, and unreviewable discretion to detain Petitioner;

and (3) the government's interest in enforcing immigration law is served by an individualized determination by an immigration court, based on a review of evidence presented by the government and the noncitizen, as to whether an individual is dangerous or at risk of fleeing removal proceedings under existing, well-established procedures. See id. 334–35; see also Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention under 8 U.S.C. § 1226(a)). Moreover, the government has no interest in the unjustified deprivation of a noncitizen's liberty. See Zadvydas v. Davis, 533 U.S. 678, 690 (2001) (civil immigration detention is permissible only to prevent flight or to protect against danger to the community). Finally, because Respondents have asserted no individualized justification—let alone a special or compelling justification—to continue to deprive Petitioner of his physical liberty, this Court finds that Petitioner is currently detained in violation of his substantive due process rights. See Escobar Salgado, 2025 WL 3205356, at *25.

Additionally, the Court also finds Petitioner has clearly established that he faces imminent irreparable injury in the absence of preliminary injunctive relief. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976)). Hence, "[w]hen an alleged deprivation of a constitutional right is involved, most courts hold no further showing of irreparable injury is necessary." Vasquez Perdomo v. Noem, 148 F.4th 656, 689 (9th Cir. 2025) (citation omitted). Since this Court has already concluded that Petitioner is being detained in violation of his constitutional due process rights, it follows "inexorably" that Petitioner has carried his burden as to irreparable harm. See Hernandez v. Sessions, 872 F.3d 976, 995 (9th Cir. 2017). Likewise, the minimal, if not nonexistent, burden on the government of adhering to its own established procedures under § 1226(a)—as compared to preventable human suffering, *e.g.*, financial and emotional burdens on Petitioner, his family, and his communities— in addition to the fundamental harm of arbitrary executive detention, demonstrates that the balance of the equities and public interest tip sharply in Petitioner's favor. See id. at 995–96 ("[T]he public interest benefits from an injunction that ensures that individuals are not deprived of their liberty and held in immigration detention because of . . . likely unconstitutional process.").

Turning to the scope of relief, injunctive relief "should be no more burdensome to the [Respondents] than necessary to provide complete relief to the [Petitioner] before the court." eBay Sanctuary Covenant v. Biden, 993 F.3d 640, 680 (9th Cir. 2021) (citation modified). "Where relief can be structured on an individual basis, it must be narrowly tailored to remedy the specific harm shown[.]" Id. (citation omitted). The federal habeas corpus statute "does not limit the relief that may be granted to discharge of the applicant from physical custody." Carafas v. LaVallee, 391 U.S. 234, 238 (1968). "Its mandate is broad with respect to the relief that may be granted." Id. "It provides that '[t]he court shall . . . dispose of the matter as law and justice require.'" Id. (quoting 28 U.S.C. § 2243). Here, the Court finds that the specific harm suffered by Petitioner—continued detention in the absence of a bond hearing pursuant to the government's incorrect statutory interpretation and unlawful policy—is remedied by ordering Respondents to provide Petitioner with a bond hearing pursuant to § 1226(a) by February 6, 2026. Given the due process rights at stake, if a bond hearing is not provided promptly within that time frame, Petitioner shall be immediately released unless, and until, it is determined that his detention is warranted under 8 U.S.C. § 1226(a) and its implementing regulations.

Finally, with respect to bond, Federal Rule of Civil Procedure 65(c) allows a court to "issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." FED. R. CIV. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, if any.'" Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003)). "In particular, 'the district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" Id. (citation modified) (quoting Jorgensen, 320 F.3d at 919). Respondents have not argued that conducting a bond hearing will be costly. Therefore, the Court declines to impose bond beyond the amount an IJ may set under § 1226(a).

///

///

### III. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Petitioner's Motion for a Preliminary Injunction (ECF No. 2) is **GRANTED.**

**IT IS FURTHER ORDERED** that Respondents must provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) no later than **February 6, 2026**.

**IT IS FURTHER ORDERED** that Respondents are **ENJOINED** from denying Petitioner's release on bond on the basis that he is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A). Thus, in the event that bond is granted, the Court **ENJOINS** Respondents from invoking the automatic stay to continue Petitioner's detention, as the Court has already found that the automatic stay is unconstitutional. The Court incorporates that finding by reference here. See Herrera v. Knight, No. 2:25-cv-01366-RFB-DJA, 2025 WL 2581792, at *13 (D. Nev. Sep. 5, 2025).

If bond is granted, Respondents are **ORDERED** to immediately release Petitioner. The Court has received notice of the hardship other petitioners have incurred in their efforts to satisfy bond, and, therefore, the Court **FURTHER ORDERS** that Petitioner be afforded until **March 20, 2026**, to satisfy any monetary bond conditions.

**IT IS FURTHER ORDERED** that if the individualized bond hearing is not conducted by **February 6, 2026**, Petitioner shall be immediately released unless, and until, it is determined that his detention is warranted under 8 U.S.C. § 1226(a).

**IT IS FURTHER ORDERED** the Parties shall file a joint status report by **February 7, 2026**. The status report shall detail when the bond hearing occurred, if bond was granted or denied, and, if denied, the reasons for that denial. If the bond hearing does not occur by **February 6, 2026**, the status report shall confirm Petitioner's release from detention in compliance with this Order.

///
///
///
///
///

**IT IS FURTHER ORDERED** that on or before **February 17, 2026**, the Parties shall file a stipulated proposed scheduling order for full briefing on the merits of the petition for a writ of habeas corpus (ECF No. 1).

**DATED: February 3, 2026**.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**